# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, KRAUSS and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class KHOI J. POTTER**
**United States Army, Appellant**

ARMY 20110332

101st Airborne Division (Air Assault) and Fort Campbell
Timothy Grammel, Military Judge
Lieutenant Colonel Joseph B. Morse, Staff Judge Advocate (pretrial)
Lieutenant Colonel Jeff A. Bovarnick, Staff Judge Advocate (post-trial)

For Appellant: Captain John L. Schriver, JA (argued); Colonel Patricia Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Matthew T. Grady, JA (on brief); Captain John L. Schriver, JA (on reply brief).

For Appellee:  Captain Daniel D. Maurer, JA (argued); Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain Daniel D. Maurer, JA (on brief).

8 November 2012

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

YOB, Senior Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of absenting himself from his unit, failing to go to his appointed place of duty (two specifications), missing movement by design, failing to obey a lawful order, and wrongful use of marijuana (two specifications), in violation of Articles 86, 87, 92, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887, 892, and 912a (2008) [hereinafter UCMJ].  The military judge convicted appellant, contrary to his plea, of a third specification of wrongful use of marijuana in violation of Article 86, UCMJ.  The military judge sentenced appellant to a dishonorable discharge, confinement for twenty months, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority (CA) approved only so much of the sentence as provided for a bad conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction

to the grade of E-1.  The CA deferred appellant's automatic and adjudged forfeitures and automatic and adjudged reduction in rank from 18 May 2011 until action.  At action, the CA waived the automatic forfeitures for six months, with direction that these funds be paid to appellant's dependant. Appellant was credited with two days of confinement against his sentence of confinement.

The case is before this court for review under Article 66, UCMJ.  We have considered the record of trial and the assignments of error raised by appellant, presented in written briefs and in oral argument before this court.[1]  We find these assignments of error to be without merit, but we set aside the finding of guilty to Specification 3 of Charge IV, wrongful use of marijuana, for other reasons as explained below.

## FACTUAL BACKGROUND

Appellant's trial by court-martial was held on April 15 and May 2-3, 2011. During the initial stages of the trial, the military judge accepted appellant's guilty pleas to charges of failing to go to his appointed place of duty, missing movement by design, failing to obey a lawful order, and two specifications of wrongful use of marijuana.  Appellant contested other charges that included another specification of wrongful use of marijuana, eleven specifications of assault upon his spouse, communicating a threat, child endangerment, and wrongfully endeavoring to influence the testimony of a potential witness in his case.

At the outset of the government's case on the contested charges, the trial counsel offered into evidence as a prosecution exhibit the entire report from the Fort Meade Forensic Toxicology Drug Testing Lab (FTDTL) pertaining to appellant's urinalysis sample that was the basis for the contested marijuana offense.  This report included the signature of the laboratory certifying official on the record of test results.  The military judge specifically asked defense counsel if they had any objection to admission of the report as a prosecution exhibit, and defense counsel replied, "no objection, your Honor."

Later in the trial, prior to calling their expert witness to discuss the lab report, trial counsel announced, and defense counsel agreed, that the parties were stipulating to the following facts: that appellant's unit conducted a urinalysis test; that appellant provided a sample as part of that urinalysis test; that appellant's sample went to the laboratory at Fort Meade; and, that the sample is the one

---

[1] Oral argument in this case was heard at Creighton University Law School, Omaha, Nebraska, as part of the court's "Project Outreach." This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

discussed in Prosecution Exhibit (PE) 6 (the test report and certification that had already been admitted into evidence). The military judge conducted a colloquy with appellant to ensure he understood what a stipulation was and its uses, knew he had an absolute right to refuse to stipulate, and that he still wanted to enter into the stipulation. Following this inquiry, appellant again expressed his consent to enter into the stipulation.

The only witness the trial counsel called pertaining to the contested wrongful use of marijuana charge was an officer whose duty position was Chief of Research and Development at the Fort Meade FTDTL. Based on the witness's experience and background, the military judge recognized him as an expert in the field of forensic toxicology and drug testing, without any objection from defense counsel. While the witness worked at the lab and was aware of the practice and procedures for drug testing at that location, he neither conducted nor supervised the testing of appellant's sample that led to the contested marijuana charge.

In his testimony, the expert testified about the procedures used to process and test urine samples in general. He described the contents of the lab report that had been admitted as PE 6. He stated that from his review of the report he could tell the correct receiving and processing standards were used for appellant's urine sample. The witness also testified that the FTDTL tests urine for THC, the "psychoactive ingredient in marijuana," and that THC would be found in a sample if the donor of the sample were prescribed Dronabinol for medical reasons or had otherwise consumed THC, typically by smoking or ingesting it. The witness also indicated the procedures used at the lab produce reliable screens, and that he is aware, through personal observation, that employees at the lab conducting screening and rescreening follow correct procedures. The witness stated that from reviewing the report he could tell that the sample initially tested as non-negative (positive) and was subject to a further test to confirm the presence of THC. The witness gave the opinion that the further testing showed the presence of THC in appellant's sample at the rate of 64.19 nanograms per milliliter, which is above the Department of Defense established level of 15 nanograms per milliliter above which a sample is deemed to test positive for THC. The trial counsel also elicited from the expert that THC is typically detectable through lab testing 1-3 days following ingestion, but this time can be longer in cases of chronic or heavy users.

On cross-examination, the expert admitted there was no way to tell how the drug got into appellant's system or how much he consumed at any particular time. He also admitted he could not determine whether appellant ever felt the effects of the drug. Finally, the expert confirmed he never tested the sample or supervised those who tested the sample. The government presented no additional evidence pertinent to the wrongful use of marijuana charge.

At the conclusion of the government's case, appellant did not make a motion for a finding of not guilty under Rule for Courts-Martial 917, for failure to establish

proof beyond a reasonable doubt to all elements of the wrongful use of marijuana offense. Appellant also presented no evidence pertaining to the wrongful use charge during his case in chief and appellant's trial defense counsel never mentioned the alleged wrongful use charge in closing statements, instead focusing almost exclusively on issues related to the assault charges. The military judge found appellant not guilty of all the contested charges and specifications except for the Specification of Charge IV concerning wrongful use of marijuana.

## LAW AND DISCUSSION

### *Right to Confrontation and Waiver*

Appellant alleges the military judge committed plain error by allowing the expert witness to testify about the certification and results of appellant's urinalysis, which the expert neither conducted nor supervised, as this violated appellant's Sixth Amendment Constitutional right to confrontation.

Given the posture of this case, the threshold issue we must resolve is whether appellant waived the opportunity to challenge the admissibility of this testimony on appeal under Military Rule of Evidence [hereinafter Mil. R. Evid.] 103(a)(1), or merely forfeited this issue, requiring a further plain error review under Mil. R. Evid. 103(d). *See United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). In resolving this issue, we are mindful that there is "a presumption against the waiver of constitutional rights, and for a waiver to be effective, it must be clearly established that there was an intentional relinquishment of a known right or privilege." *United States v. Sweeney*, 70 M.J. 296, 303-304 (C.A.A.F. 2011) (citing *Harcrow*, 66 M.J. at 157).

We look to the following factors in determining whether a failure to make a timely objection constitutes a waiver: whether the failure to object was part of the defense tactics or strategy; whether the right not asserted was known or knowable at the time of trial; whether defense was given an opportunity to object; and, whether appellant alleges ineffective assistance of counsel in regard to the action that would constitute the waiver. *Sweeney*, 70 M.J. at 304; *United States v. Campos*, 67 M.J. 330, 332-33 (C.A.A.F. 2009). All of these factors support our conclusion that appellant waived any confrontation clause issue.

First, it is clear that appellant employed a strategy of not challenging the wrongful use of marijuana charge through objection or presentation of evidence. Instead it appeared appellant put his efforts into the other contested charges that were related to alleged assaults appellant had committed on his wife, rather than pursue a defense for the wrongful use charge. While appellant vigorously fought these other charges, he never objected to the introduction of the entire drug lab report as a prosecution exhibit, even when the military judge specifically asked the defense counsel whether there was an objection. Further, appellant made factual

4

stipulations to significant issues related to the drug lab report necessary for the government to meet its burden of proof, to include the fact that his sample was the one referenced in the report. The military judge halted the proceedings to ensure appellant was aware of the ramifications of stipulating to these facts, after which appellant personally stated that he desired to enter into the stipulation. Appellant also failed to assert any objection to the expert witness testifying during the government's case on issues related to the drug lab report. Finally, appellant's counsel never mentioned the wrongful use charge or any facts or argument related to that charge in opening or closing statements or at any time during the defense case in chief.

The confrontation right at issue in this case was knowable at the time of appellant's trial. Our superior court had alerted practitioners as to the testimonial nature of some portions of drug testing reports and called into question the admissibility of expert testimony regarding such reports in *United States v. Blazier*, 69 M.J. 218 (C.A.A.F. 2010) (also referred to as "*Blazier II*" with a holding based upon the decision of the United States Supreme Court in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)). As such, we conclude appellant's counsel could have made a "colorable objection" to the admission of the drug testing report and/or to the testimony of the government expert, but chose not to do so for tactical reasons. *Sweeney*, 70 M.J. at 304.

Lastly, there is no indication appellant is alleging he received ineffective assistance of counsel in regard to the waiver at issue. The record provides no evidence that appellant dissented from the tactical decision to focus on the charges related to appellant's alleged assault on his wife and not present any defense to the marijuana charge or object to evidence related to this charge. In light of our review of these factors, we conclude the failure to object to the expert testimony on confrontation grounds constituted waiver of the issue, and leaves no error for us to review.

*Factual Sufficiency*

In conjunction with our appellate review of cases under Article 66, UCMJ, we conduct a de novo review of the factual sufficiency of the evidence. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our standard for factual sufficiency is, "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the [reviewing court] are themselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

To obtain a conviction under Article 112a, UCMJ, for wrongful use of marijuana in this case, the prosecution must have proven: (a) that the accused used marijuana; and, (b) that the use by the accused was wrongful. *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 37b(2). Paragraph

37b(10) of the *MCM* notes that knowledge by the accused of the presence of the controlled substance is a required component of use, and knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence.

Our superior court has held that when scientific methods of testing are relied upon to prove marijuana use, the government cannot presume that the judge (when operating as fact finder) is an expert capable of interpreting such evidence. *United States v. Murphy*, 23 M.J. 310, 312 (C.M.A. 1987) (citing *United States v. Conley*, 4 M.J. 327, 330 (C.M.A. 1978)). In addition, "such evidence clearly needs in-court expert testimony to assist the trier of fact in interpreting it if it is to rationally prove that an accused used marijuana." *Murphy*, 23 M.J. at 312 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "Expert testimony interpreting the tests or some other lawful substitute in the record is required to prove a rational basis upon which the factfinder may draw an inference that marijuana was used." *Id.* (citing *United States v. Ford*, 4 U.S.C.M.A. 611, 16 C.M.R. 185 (1954)). Our superior court held in *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001), "[A] urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation required by *Murphy*, provides a legally sufficient basis on which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning psychological effects." *See United States v. Bond*, 46 M.J. 86, 89 (C.A.A.F. 1997).

In appellant's case, the expert witness testimony included his opinion that the testing of appellant's sample was conducted properly and that the resulting nanogram level of THC in appellant's sample exceeded a cutoff level established by the Department of Defense. He also noted that THC can be found in one's system through prescribed medication, smoking or other ingesting marijuana. The expert provided no explanation of the meaning and implication of the cutoff level or its application in this case.

The expert witness admitted on cross-examination that after his review of the test he could not determine whether appellant would have actually "felt the effects" of the drug. Neither the government nor military judge followed the cross-examination with any further questions of the expert that would address this conclusion by the expert witness. The expert witness never discussed the relevance of his conclusion in light of the tested nanogram level recorded for appellant's sample. We are left with a record containing no meaningful expert interpretation of the test results and no explanation of how the test results can be relied upon given that the expert cannot conclude what amount of marijuana consumed at any given time and cannot state that the appellant ever experienced the effect of the drug. The government presented no other evidence of appellant's wrongful use of marijuana apart from the positive test and expert interpretation. Under these circumstances, we find the evidence failed to provide us with a sufficient basis to draw the permissive inference of knowing, wrongful use of marijuana and we further find that the

evidence, taken as a whole, did not support the finding of guilty for the wrongful use of marijuana specification at issue.

**CONCLUSION**

We find the evidence factually insufficient to support appellant's conviction of Specification 3 of Charge IV, wrongful use of marijuana. *See Turner*, 25 M.J. 324 (C.M.A. 1987). The finding of guilty for this specification is set aside and the specification is dismissed.

The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion, the court affirms only so much of the sentence as provides for a bad conduct discharge, confinement for fifteen months, and reduction to the grade of E-1 .[2] All rights, privileges, and property, of which appellant was deprived by virtue of that portion of his sentence being set aside by this decision, are hereby ordered restored. *See* UCMJ arts. 58(b) and 75(a).

Judge KRAUSS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[2] The CA approved appellant's request for deferment of automatic and adjudged forfeitures until action, and waiver of forfeitures for a six-month period after action. Subsequently, the waiver of forfeitures for the benefit of appellant's dependent was restated in the CA's action. However, the action also approved the adjudged sentence, which included the total forfeiture of pay and allowances, thus leaving no pay and allowances to waive for the benefit of appellant's spouse. In order to effectuate the clear intent of the CA, we set aside that portion of the sentence that included total forfeitures of pay and allowances.